Michael A. Strauss CA Bar No. 246718
Andrew C. Ellison CA Bar No. 283884
**STRAUSS & STRAUSS, APC**
121 North Fir Street, Suite F
Ventura, CA 93001
Telephone: 805.641.6600
Facsimile: 805.641.6607
Attorneys for Plaintiff JASMIN TURNER and
the Putative Class

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

JASMIN TURNER, an individual,

              Plaintiff,

       v.

MOTEL 6 OPERATING L.P.; and
DOES 1 through 100, inclusive,

              Defendants.

Case No. 2:17-cv-02544-PSG-SS

(Removed from Ventura County Superior Court Case No. Case No. 56-2017-00492935-CU-OE-VTA)

*Assigned to Hon. Philip S. Gutierrez*

**<u>CLASS ACTION</u>**

**NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES, AND SERVICE AWARD;**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

*[Filed concurrently with the Declarations of Michael A. Strauss, Administrator Melinda Yang, and the (Proposed) Final Judgment]*

**DATE:      NOVEMBER 5, 2018**
**TIME:       1:30 P.M.**
**COURTROOM: 6A, 6TH FL.**

**TO ALL PARTIES HEREIN AND TO THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on November 5, 2018 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 6A, 6th Floor of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, CA 90012, Plaintiff Jasmin Turner, and the Settlement Class ("Plaintiffs"), on their own behalf, and on behalf of the certified class herein, will move for final approval of a class-wide settlement reached herein.   Preliminary approval of the settlement was granted by this Court on July 30, 2018.  (CM/ECF Docket No. 29).

This motion is unopposed.  Said Motion shall be based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities filed herewith, the declaration of Michael A. Strauss, Administrator Melinda Yang, and upon such further evidence, both documentary and oral, as may be presented at the hearing of said motion.

DATED: October 5, 2018                    **STRAUSS & STRAUSS, APC**

By:

<u>/S Michael A. Strauss</u>
Michael A. Strauss
Andrew C. Ellison
Attorneys for Plaintiff

# TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................1

II.    BACKGROUND ......................................................................................2

   A.    Summary of the Litigation to Date. ...................................................2

   B.    Administration of Claims and Notice, After Preliminary Approval. ...................3

   C.    Material Terms of the Settlement Agreement. ....................................4

     1.    Composition of Settlement Class. ..............................................4

   D.    Settlement Amount. ..........................................................................4

   E.    Scope of Release. ..............................................................................5

III.    LEGAL STANDARD RE: FINAL APPROVAL OF A CLASS ACTION SETTLEMENT ........................................................................................6

IV.    ANALYSIS ..............................................................................................7

   A.    The Fed. R. Civ. P. Rule 23 Standards Are Met. ..............................7

     2.    Rule 23(a) and (b). ......................................................................7

     3.    Rule 23(c)(2) Notice Requirements. ..........................................8

   B.    Assessing whether the Class Settlement is Fair, Reasonable, and Adequate under Rule 23(e). ..................................................................8

     1.    Strength of Plaintiff's Case.........................................................8

     2.    Risk, Expense, Complexity, and Likely Duration of Further Litigation. ...........9

     3.    Amount Offered in Settlement. ................................................10

     4.    Extent of Discovery Completed and the Stage of the Proceedings. ..................10

     5.    Experience and Views of Counsel. ..........................................12

     6.    Presence of Governmental Participant......................................12

     7.    Reaction of the Class Members to the Proposed Settlement. ...........................13

V.    ATTORNEY'S FEES AND COSTS......................................................13

VI.    REQUESTS FOR COST REIMBURSEMENT .....................................16

VII.    REQUESTS FOR SERVICE PAYMENTS ...........................................16

VIII.    The PAGA Payment Should Be Approved. ........................................17

1

A.    The Labor Code Private Attorneys General Act Of 2004 Generally. ...................17

B.    The PAGA Penalties Sought In The Settlement Are Reasonable. .......................18

IX.    CONCLUSION ..................................................................................................19

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **TABLE OF AUTHORITIES**

**Cases**

*Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157 (2008) .........................................21

*Arias v. Superior Court*, 46 Cal.4th 969 (2009).............................................................21

*Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992) ..............................................7

*Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113 (C.D. Cal. 2008) ...............15, 18

*Create-A-Card, Inc. v. Intuit, Inc.*, 2009 WL 3073920 (N.D. Cal. 2009) ......................14

*Fischel v. Equitable Life Assurance Society of the United States*, 307 F.3d 997
  (9th Cir. 2002).........................................................................................................15

*Franco v. Ruiz Food Prods., Inc.*, 2012 WL 5941801 (E.D. Cal. 2012) ......................22

*Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862,
  (N.D. Cal. Jan. 26, 2007) (*aff'd*, 331 F. App'x 452) (9th Cir. 2009).....................15, 17

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).............................................7

*Harris v. Vector Marketing*, No. C–08–5198, 2012 WL 381202
  (N.D. Cal. Feb.6, 2012) ..........................................................................................8

*Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616 (S.D. Cal. 2004)..........14

*In re Apollo Group Inc. Securities Litigation*, Nos. CV 04–2147–PHX–JAT,
  CV 04–2204–PHX–JAT, CV 04–2334–PHX–JAT, 2012 WL 1378677
  (D. Ariz. Apr. 20, 2012) ..........................................................................................8

*In re Consumer Privacy Cases*, 175 Cal. App. 4th 545 (2009) ....................................15

*In re Enron Corp. Securities, Derivative & "ERISA" Litigation,* 228 F.R.D. 541
  (S.D. Tex. 2005).....................................................................................................10

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000).................................20

*In re Wash. Pub. Power Supply Sys. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ....................15

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F.Supp. 1379 (D. Ariz. 1989)........9

*Ingram v. Coca-Cola Co.* 200 F.R.D. 685 (N.D. Ga. 2001) .........................................19

*Jaffe v. Morgan Stanley & Co., Inc.*, 2008 WL 346417 (N.D. Cal. 2008) ....................12

1

2  *Knisley v. Network Assocs.*, 312 F.3d 1123 (9th Cir. 2002) ...........................14

3  *Ladore v. Ecolab, Inc.*, C.D. Cal. Case No. 2:11-cv-09386-FMO-JC ..........................15

4  *Miller v. CEVA Logistics USA, Inc.*, No. 2:13-CV-01321-TLN, 2015 WL 4730176

5  (E.D. Cal. Aug. 10, 2015)...............................................................................8, 9

6  *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443 (E.D. Cal. 2013) ......................14

7  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523

8  (C.D. Cal. 2004) .................................................................................10, 13

9  *Nelson v. Bennett*, 662 F. Supp. 1324 (E.D. Cal. 1987)..........................................12

10  *Newton v. Parker Drilling Mgmt. Servs., Inc., et al.*, C.D. Cal. Case No.

11  2:15-cv-02517-RGK-AGR ...............................................................10, 16

12  *Nordstrom Comm'n Cases*, 186 Cal.App.4th 576 (2010)...........................................22

13  *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,

14  688 F.2d 615 (9th Cir. 1982) ...........................................................................9

15  *Reyna v. Venoco, Inc.*, C.D. Cal. Case No. 2:15-cv-04525-PA-RAO ..........................10

16  *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009)..............................12

17  *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841 (E.D. Cal. 2007) .............18

18  *Singer v. Becton Dickinson and Co.*, 2010 WL 2196104 (S.D. Cal. 2010)...................18

19  *Staton v. Boeing* 327 F.3d 938 .......................................................................15, 19, 20

20  *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115 (3d Cir. 1990) .....................................14

21  *Tech-Bilt, Inc. v. Woodward-Clyde & Associates*, 38 Cal. 3d 488 (1985) ...................12

22  *Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal.App.4th 1112 (2012)...................21

23  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir.1993)......................................9

24  *Van Vranken v. Atl. Richfield Co.*, 901 F.Supp. 294 (N.D. Cal. 1995)...................19, 20

25  *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010).....................18

26  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ...................................15, 17

27  *Williams et al. v. Brinderson Constructors, Inc.*, C.D. Cal. Case No.

28  2:15-cv-02474-MWF-AGR .......................................................................10

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983) ........................................................11

**Statutes**

Fed. Rule of Civ. Proc., Rule 23 ...................................................................................7, 8


*Cal. Business & Professions Code* section 17200 ..........................................................2

*Cal. Labor Code* section 226 ..........................................................................................3

*Cal. Labor Code* section 203 ..........................................................................................2

*Cal. Labor Code* section 2699 ........................................................................................3

*Cal. Labor Code* section 2699.3 ...................................................................................13


**Treatises**

*Newberg on Class Actions*, § 13:10 (5th ed. 2014) ........................................................7

*Newberg on Class Actions*, § 14:6 (4th ed. 2002) .......................................................18

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES, AND SERVICE AWARD**
**2:17-cv-02544-PSG-SS**

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I. INTRODUCTION

3   This is an unopposed motion by Plaintiff Jasmin Turner ("Plaintiff") for final

4   approval of settlement. Previously, this Court issued its Order of July 30, 2018 (CM/ECF

5   Dkt. No. 29) granting the parties' Joint Motion for Preliminary Approval and also

6   preliminarily approving of the requested attorneys' fees sought herein by Class Counsel.

7   The Court found that the terms of the proposed settlement are "fair, adequate and

8   reasonable, and that they comply with Rule 23(e) of the Federal Rules of Civil

9   Procedure." *Id.* at ¶ 1.

10  Now, after the Class has been given notice of the settlement terms, and has had the

11  opportunity to make objections or request exclusion, and <u>none</u> have heretofore[1] objected

12  or requested exclusion, Plaintiff seeks this honorable Court's final approval of the

13  settlement reached, including disbursement of the settlement funds to the settlement class

14  members, the PAGA payment, final approval of disbursement of the attorneys' fees

15  previously approved by the Court, litigation costs, and approval of the service awards

16  intended for the Plaintiff.

17  The settlement requires Motel 6 to pay $1,364,752.09 as the settlement amount on

18  behalf of the 2,780 settlement class members herein. The settlement is in the best interest

19  of those class members, has received overwhelming support, and the facts warrant final

20  approval of the settlement. This motion is made following the required conference of

21  counsel pursuant to (and consistent with) the requirements of L.R. 7-3, which took place

22  on several occasions throughout August – September of 2018 (i.e. during the pendency

23  of the opt-out period).

24

25

26  [1] The exclusion deadline herein was, October 1, 2018. As of the date of this pleading, there have been no objections or requests for exclusion ("opt-outs") by the class. Prior

27  to the hearing on the within Motion, Plaintiffs will file a declaration from CPT Group, Inc., the Court-appointed claims administrator, with a final tally of claims, objections,

28  and opt-outs.

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT,  ATTORNEYS' FEES, AND SERVICE AWARD 2:17-cv-02544-PSG-SS**

## II. BACKGROUND

### A. Summary of the Litigation to Date.

Plaintiff brought a class action on behalf of a class of all night auditors and those, however titled, working the night auditor shift ("Night Auditors" or "Night Auditor") employed by Motel 6 Operating L.P. at any location in California at any time during the period of February 15, 2013 and through the date of Preliminary Approval of the Settlement, or July 30, 2018. (Joint Stipulation re: Class Action Settlement, ECF No. 28, ¶ 14; Second Amended Complaint, ECF No. 23).

Defendant MOTEL 6, L.P. ("MOTEL 6") operates hotels throughout the state. (Joint Preliminary Approval Motion, ECF No. 26, Memorandum of Points and Authorities, p. 2) (internal citations omitted). The named Plaintiff in this case recently worked for MOTEL 6 in California. *Id.* Plaintiff alleges she was always on duty and could not leave the motel premises, including for her meal and rest periods. *Id.*; *see also,* Declarations of the Named Plaintiff Jasmin Turner iso Motion for Preliminary Approval, (ECF No. 26-3; hereafter "Turner Decl.").

Plaintiff alleged six (6) interrelated causes of action in this matter. (Second Amended Complaint, ECF No. 23). The claims are based on the allegations that the putative class members must always be "on call" and cannot leave the premises during meal periods or rest breaks. *Id.* The SAC alleges unfair business practices in violation of California *Business & Professions Code* section 17200 *et seq.* (the "UCL"). The SAC seeks itemized wage statement penalties under *Labor Code* section 226, which is derivative of the allegations supporting the wage claims. *Id.* The final cause of action herein is for civil penalties available under the Private Attorneys General Act of 2004, *California Labor Code* section 2699 *et seq.* ("PAGA"). The PAGA claim seeks civil penalties against MOTEL 6 for violation of various sections of the *Labor Code*. (*See* ECF No. 26; *also*, Preliminary Approval Motion, ECF No. 36, Memorandum of Points and Authorities, p. 7).

1    The parties reached a settlement at mediation conducted on February 26, 2018,
2    with the assistance of mediator Mark Rudy, Esq.   (Strauss Decl. ISO Preliminary
3    Approval, ECF No. 26-2, ¶¶ 10-11).   The proposed settlement was submitted to the
4    LWDA on June 11, 2018, and no objection was received.  (Strauss Declaration, ¶ 37).  A
5    Joint Motion for Preliminary Approval of Class Action Settlement was filed on July 27,
6    2018.  (ECF No. 28).  By this Court's Order, dated July 30, 2018, this Court preliminarily
7    approved the settlement and provisionally certified the Settlement Class. (ECF No. 29.)

8    **B. Administration of Claims and Notice, After Preliminary Approval.**

9    The Notice of Class Action Settlement was sent to each Settlement Class Member
10   on August 31, 2018.  (Strauss Declaration, ¶ 35; *see also,* the Declaration of Melinda
11   Yang of CPT Group, Inc., attached to the Strauss Declaration as Exh. 1 (hereafter, the
12   "CPT Decl.") ¶ 6).  The objection deadline passed on October 1, 2018. (Strauss Decl. ¶
13   36).   The objection period will close October 21, 2018. (ECF No. 26-1 at III(J)(2).)
14   Pursuant to the Court's direction, the final approval or "fairness" hearing was set for
15   November 5, 2018.  (ECF No. 29).

16   Pursuant to the Court's Order Granting Preliminary Approval, CPT Group, Inc.
17   ("CPT") was retained to act as the claims administrator.

18   As set forth more fully in the CPT Declaration, the following is a summary of the
19   notice and claims process administered pursuant to the settlement:

20       (1) On August 31, 2018, Notice Packets were mailed out;

21       (2) Fifty-five (55) Notice Packet was returned as "undeliverable;"[2]

22       (3) No (*i.e.*, zero) requests for exclusion or objections have been received
23            by CPT;

24       (4) Two disputes of hours worked were received, and one (1) individual not
25            on the Class List contacted CPT inquiring if they qualify to be part of

26

27   _____

28   [2] 55 out of 2,780 class members represents less than 2% of the total.

the Settlement and provided supporting documents. CPT sent this inquiry to Motel 6's Counsel for review.;

(5) CPT reports a total of two thousand seven hundred eighty (2,780) Participating Class Members. This represents a 100% participation rate; and

(6) Any unclaimed funds will be redistributed to class members who have submitted valid claims, per the Settlement; any unclaimed (*i.e.,* uncashed) checks shall escheat to the appropriate state agency(ies), pursuant to the terms of the Settlement Agreement.

(See CPT Declaration, ¶¶ 6-13; *also,* ECF No. 26-1, at ¶ (F)(2)(b)).

## C. Material Terms of the Settlement Agreement.

### 1. Composition of Settlement Class.

Consistent with the definitions provided in the Settlement Agreement (ECF No. 26-1), the term Settlement Class Members includes "all night auditors and those, however titled, working the night auditor shift ("Night Auditors" or "Night Auditor") employed by Motel 6 Operating L.P. at any location in California at any time during the period of February 15, 2013 and through the date of Preliminary Approval of the Settlement, or July 30, 2018. From the date of the preliminary approval Order, 2,780 individuals within the Settlement Class definition have been identified, and have been mailed Notice of the Class Action Settlement. (Strauss Decl. ¶ 16).

### D. Settlement Amount.

The parties agreed to a provisional settlement amount $1,250,000.00, at mediation based on 2,425 putative class members, but the stipulation of settlement provided for a proportional increase of the common fund to be triggered if the class grew by more than 5% as of the date of preliminary approval, to compensate all of the heretofore unaccounted for class members accordingly. This escalator clause was triggered as the number of class members had increased to 2,780 by the time preliminary approval was granted, and the common fund was increased to $1,364,752.09. (ECF No. 26-1, at ¶ III(A)). Pursuant to the terms of the Settlement Agreement, Class Counsel fees amount

to 30% of the Gross Settlement Amount with costs of up to $15,000 to be paid from the Maximum Settlement Amount. (*Id.* at ¶ III(B)). However, Class counsel are only seeking 25% of the Gross settlement in this motion. The Maximum Settlement Amount also includes payments to Named Plaintiff as Class Representatives in the amounts of up to $7,500 for Plaintiff Turner. Finally, this Maximum Settlement Amount also includes $23,000 to be paid to the Claims Administrator, CPT Group, Inc. for costs of administration. (*Id.* at ¶¶ I(R) and III(A)). The final costs of the claims administrator are $25,500, exceeding the initial estimate, because the size of the class grew to 2,780 from 2,425 between the mediation date and the preliminary approval date. (CPT decl. ¶ 16). The value of the common fund also increased by a proportionate percentage according to the terms of the settlement agreement. (ECF No. 26-1, at ¶ III(A)).

**E. Scope of Release.**

As of the date of the Final Approval Order and Judgment, and the effective date as set forth in the Agreement ("Effective Date"), all Released Claims of each Settlement Class Member will and shall be deemed to be conclusively released as against the Released Parties. The Released Claims shall mean any and all claims asserted in the Lawsuit against the Released Parties, or that could have been asserted against the Released Parties, based upon the facts alleged in the Lawsuit or arising out of circumstances giving rise to the Lawsuit, by Plaintiff or any Settlement Class Member from February 15, 2013 to the Preliminary Approval Date. (ECF No. 26-1, at ¶ III(P)).

The Released Claims include, **but are not limited to, any and all claims for: (1) failure to provide lawful rest periods, and failure to pay rest period premium pay; (2) failure to provide lawful meal periods, and failure to pay meal period premium pay; (3) unfair competition in violation of Business and Professions Code §§ 17200 et seq. based on all alleged violations of the California Labor Code; (4) failure to timely pay final wages; (5) pay stub/wage statement violations; and (6) claims for penalties or related damages under the Private Attorney General Act, California Labor Code section 2698 et seq. based on the alleged violations of the California Labor Code *Id.*

1    With regard to the Named Plaintiff, the Court approved of release language under
2    which the Named Plaintiff released "a complete and general release of all known and
3    unknown claims, including but not limited to any claims arising out of the Named
4    Plaintiff's employment or ending of employment.  This complete and general release
5    applies to any and all claims, without limitation, against Motel 6 and all of the Released
6    Parties.."  (ECF No. 26-1, at ¶ III(P)(4)).
7    Therefore, pursuant to the Settlement Agreement (ECF No. 26-1), and this Court's
8    order approving of same (ECF No. 29) each Named Plaintiff and Settlement Class
9    Member, upon the Effective Date, shall be deemed to have and by operation of the Final
10   Judgment shall have fully, finally, and forever settled and released any and all of the
11   Released Claims against Released Parties.

## III.    LEGAL STANDARD RE: FINAL APPROVAL OF A CLASS ACTION SETTLEMENT

14   A settlement of class litigation must be reviewed and approved by the court.  Fed.
15   Rule of Civ. Proc. 23(e). This approval process is done in three stages:

> First, the parties present a proposed settlement to the court for so-called "preliminary approval." If a class has not yet been certified, typically the parties will simultaneously ask the court to "conditionally" certify a settlement class.
>
> Second, if the court does preliminarily approve the settlement (and conditionally certify the class), notice is sent to the class describing the terms of the proposed settlement, class members are given an opportunity to object or, in Rule 23(b)(3) class actions, to opt out of the settlement, and the court holds a fairness hearing at which class members may appear and support or object to the settlement.
>
> Third, taking account of all of the information learned during that process, the court decides whether or not to give "final approval" to the settlement. As the parties may also have moved for class certification at this point in the litigation, final approval can also encompass a decision certifying the class.

*Newberg on Class Actions*, § 13:10 (5th ed. 2014).

27   Whether to approve a class action settlement is "committed to the sound discretion
28   of the trial judge." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  A

1    strong judicial policy favors settlement of class actions. *Id.*

2    When considering final approval of a class action settlement, the Court must

3    evaluate whether the settlement is "fair, adequate and reasonable." Fed. Rule of Civ.

4    Proc. Rule 23(e)(2); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

5    Neither district courts nor appellate courts have the power to delete, modify, or substitute

6    provisions in the negotiated settlement agreement. *Hanlon*, 150 F.3d at 1026. "The

7    settlement must stand or fall in its entirety." *Id.*

8    In order to approve the class action settlement herein, the Court must conduct a

9    three-step inquiry. First, the Court must determine that the prerequisites of FRCP Rule

10    23(a) and Rule 23(b) have been met. Second, the Court must decide whether the notice

11    requirements of Federal Rule of Civil Procedure 23(c)(2)(B)(3) have been satisfied.

12    Finally, the Court must find that the proposed settlement is fair, reasonable, and adequate

13    under Rule 23(e)(3).

14    **IV.    ANALYSIS**

15    **A.  The Fed. R. Civ. P. Rule 23 Standards Are Met.**

16    **1. Rule 23(a) and (b).**

17    The Court previously determined that the prerequisites of FRCP Rule 23(a) and

18    Rule 23(b) have already been met (ECF No. 29), so there is no need for the Court to

19    repeat the analysis here. *Miller v. CEVA Logistics USA, Inc.*, No. 2:13-CV-01321-TLN,

20    2015 WL 4730176, at *4 (E.D. Cal. Aug. 10, 2015); *see, e.g., Harris v. Vector Marketing*,

21    No. C–08–5198, 2012 WL 381202 at *3, at *7 (N.D. Cal. Feb.6, 2012) ("As a preliminary

22    matter, the Court notes that it previously certified ... a Rule 23(b)(3) class ... [and thus]

23    need not analyze whether the requirements for certification have been met and may focus

24    instead on whether the proposed settlement is fair, adequate, and reasonable"); *In re*

25    *Apollo Group Inc. Securities Litigation*, Nos. CV 04–2147–PHX–JAT, CV 04–2204–

26    PHX–JAT, CV 04–2334–PHX–JAT, 2012 WL 1378677 at *4 (D. Ariz. Apr. 20, 2012)

27    ("The Court has previously certified, pursuant to Rule 23 of the Federal Rules of Civil

28    Procedure, and hereby reconfirms its order certifying a class").

### 2. Rule 23(c)(2) Notice Requirements.

Class actions brought under FRCP Rule 23(b)(3) must satisfy the notice provisions of FRCP Rule 23(c)(2). The Court previously found the method of notice to be reasonable. (ECF No. 29). The Court need not revisit its earlier determination that notice to the settlement class was proper.  *See Miller v. CEVA Logistics USA, Inc.*, 2015 WL 4730176, at *4 (court found no reason to revisit its earlier determination that the notice was proper).

### B. Assessing whether the Class Settlement is Fair, Reasonable, and Adequate under Rule 23(e).

In assessing whether a settlement is fair, adequate and reasonable to all, the Court must balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir.1993), *quoting Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

### 1. Strength of Plaintiff's Case.

The first factor addresses the strength of Plaintiff's case. When assessing the strength of a plaintiff's case, the court does not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of this litigation." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F.Supp. 1379, 1388 (D. Ariz. 1989). Instead, the court is to "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Id.*; *Miller v. CEVA Logistics USA, Inc.*, 2015 WL 4730176, at *4.  The Court's assessment of the likelihood of success is "nothing more than an 'amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice*, 688

1    F.2d at 625 (citation omitted).

2        Plaintiff contends that a Motion for Class Certification would have been granted

3    in the action because the evidence reveals that Defendant's wage and hour policies were

4    uniform as to all Class Members.  Defendants, however, would have vigorously opposed

5    certification (*see* Joint Rule 26 Report, ECF No. 15).

6        Plaintiff is filing this <u>unopposed</u> Motion for Final Approval for Class Action

7    Settlement. The likelihood of *decertification* at this time is extremely small, given

8    Defendants' non-opposition.  *Miller v. CEVA Logistics USA, Inc.*, 2015 WL 4730176, at

9    *5.  Plaintiff's case therefore remains sufficiently strong to support the implementation

10   of the settlement agreement.

11        **2.  Risk, Expense, Complexity, and Likely Duration of Further Litigation.**

12        The second factor involves the risk, expense, complexity, and likely duration of

13   further litigation. Avoiding expenditure of resources and time that would most likely

14   result from additional litigation would benefit both the parties and the Court. *Miller v.*

15   *CEVA Logistics USA, Inc.*, 2015 WL 4730176, at *5, *citing In re Enron Corp. Securities,*

16   *Derivative & "ERISA" Litigation,* 228 F.R.D. 541, 565 (S.D. Tex. 2005).  "[U]nless the

17   settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and

18   expensive litigation with uncertain results."  *Nat'l Rural Telecomms. Coop. v. DIRECTV,*

19   *Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

20        Plaintiff anticipates further protracted and difficult litigation on issues of liability

21   and certification, in the absence of the settlement.

22        Given the length, complexity, and number of issues involved in both class

23   certification and at trial, it is possible the case would not be certified and/or a jury may

24   not reach a unanimous verdict on all issues. Furthermore, even if the jury did reach

25   unanimous verdicts, an appeal is likely. Avoiding any adverse rulings in this case – as to

26   certification, trial and/or subsequent appeals – strongly weighs in favor of settlement

27   rather than further protracted and uncertain litigation. The above risks associated with

28   class certification, liability, and damages were taken into consideration when resolving

1  the case. (ECF No. 26-1 at II(B); Strauss Decl. ¶ 10).

2      With this settlement, the Settlement Class Members have an opportunity for an

3  immediate, guaranteed payout instead of prolonged litigation, which will run the risk of

4  uncertain recovery. These facts weigh in favor of settlement.  *See Nat'l Rural Telecomm.*

5  *Coop.*, 221 F.R.D. at 526 (noting with respect to class action settlements: "[c]ourt shall

6  consider the vagaries of litigation and compare the significance of immediate recovery

7  by way of the compromise to the mere possibility of relief in the future, after protracted

8  and expensive litigation.").  Taking into consideration the time and costs required for

9  further litigation, and the risks on the merits, this factor weighs in favor of settlement

10  approval.

11      **3.  Amount Offered in Settlement.**

12      In assessing the amount obtained by the class members in a class action settlement,

13  "[i]t is the complete package taken as a whole, rather than the individual component parts,

14  that must be examined for overall fairness."  *Officers for Justice*, 688 F.2d at 628 (9th

15  Cir. 1982); *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983) (court may not

16  withhold approval merely because settlement is only a fraction of what a successful

17  plaintiff would have received in a fully litigated case).

18      After the parties exchanged discovery, they ultimately reached a settlement with

19  the help of an experienced mediator, Mark Rudy. (Strauss Decl. ¶ 10). Pursuant to the

20  Settlement Agreement, Defendants agreed to pay a total sum of $1,250,000.00 which

21  increased to $1,364,752.09 (the "Maximum Settlement Amount"). There are 2,780

22  Settlement Class Members and, therefore, the average *per capita* settlement money

23  available is $490.00 before deduction of costs, fees and expenses of administration.

24      There is no reason to believe that the amount offered in settlement, taken as a

25  whole, is unfair. Therefore, this factor weighs in favor of approval of the settlement.

26      **4.  Extent of Discovery Completed and the Stage of the Proceedings.**

27      "A settlement following sufficient discovery and genuine arms-length negotiation

28  is presumed fair."  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528.  "A court is more

1    likely to approve a settlement if most of the discovery is completed because it suggests

2    that the parties arrived at a compromise based on a full understanding of the legal and

3    factual issues surrounding the case." *Id.* at 527.  The court can look to whether Plaintiff

4    had "a good grasp on the merits of [their] case before settlement talks began." *Rodriguez*

5    *v. West Publishing Corp.*, 563 F.3d 948, 967 (9th Cir. 2009); *see also Jaffe v. Morgan*

6    *Stanley & Co., Inc.*, 2008 WL 346417, at *9 (N.D. Cal. 2008) (finding approval

7    appropriate where parties had engaged in extensive discovery prior to settlement).

8    "[P]ractical considerations obviously require that the evaluation be made on the basis of

9    information available at the time of settlement."  *Nelson v. Bennett*, 662 F. Supp. 1324,

10   1327 n. 4 (E.D. Cal. 1987) (quoting the California Supreme Court in *Tech-Bilt, Inc. v.*

11   *Woodward-Clyde & Associates*, 38 Cal. 3d 488, 499, 213 Cal. Rptr. 256, 698 P. 2d 159

12   (1985)).

13          Here, the parties exchanged formal discovery, and informal mediation discovery.

14   (Strauss Decl. ¶¶ 12-13).  The parties also reviewed and analyzed data and records

15   pertaining to the class members, the class period, and were able to calculate a range of

16   potential damages. (Strauss Decl. ¶ 13).

17          Extensive research and review of pleadings in similar litigations involving the legal

18   issues in this case (i.e., other wage/hour matters involving meal and rest breaks) were

19   considered as part of the investigation and analysis done in this case relative to the

20   settlement.  Plaintiff's counsel considered the strengths and weaknesses of their case, and

21   of the defense.  Defense counsel weighed the same issues, from a defense perspective.

22          In addition to the foregoing, the parties participated in a full-day mediation with a

23   respected wage/hour mediator, Mark Rudy, Esq. (ECF No. 26-1 at pp. 1-2).  The

24   settlement was the result of arms-length negotiations conducted by an experienced

25   mediator. Accordingly, the parties' careful investigation of the claims, the defenses, and

26   their resolution, in consideration of the views of an experienced mediator, all weigh in

27   favor of approving the settlement.

28

## 5.  Experience and Views of Counsel.

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.  This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation."  *Nat'l Rural Telecomms. Coop*, 221 F.R.D. at 528.

Here, Class Counsel have extensive experience in class action litigation and their work on the case permitted Class Counsel to thoroughly evaluate the merits of the case. (Strauss Decl. ¶¶ 21-31). Class Counsel has been appointed Class Counsel in myriad California wage-and-hour class action cases during the past 5 years. *Id*.  Plaintiff's counsel, along with the Class Representatives, all strongly believe that the Settlement is a fair and adequate, and preferable to continued litigation. (Turner Decl. ¶ 16). Class Counsel's experience and statements both support the Court's final approval of the settlement agreement.

## 6.  Presence of Governmental Participant.

There is no governmental "participant" (i.e. party) to this litigation; however, California's Labor and Workforce Development Agency (LWDA) is a government entity potentially affected by this action.  Plaintiff has complied with the statutory notice requirements prior to bringing their claim for PAGA penalties.  *See Cal. Lab. Code* § 2699.3.  Section 2699(i) provides that any civil penalties recovered under these provisions shall be apportioned 75/25 between the agency and the aggrieved employees, as will occur in this case pursuant to the terms of the Settlement Agreement. *See Cal. Lab. Code* § 2699(i); (ECF No. 26-1, at ¶ III(C)).  Plaintiff has notified the LWDA of the proposed settlement on June 11, 2018, and did not receive a response. (Strauss Decl. ¶ 37). The LWDA stands to receive a monetary contribution from the Settlement, which will assist the State's labor law compliance efforts.  Accordingly, this factor weighs in favor of granting final approval.

### 7.  Reaction of the Class Members to the Proposed Settlement.

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *Nat'l Rural Telecomm. Coop.*,  221 F.R.D. at 529; *Create-A-Card, Inc. v. Intuit, Inc.*, 2009 WL 3073920, at *15 (N.D. Cal. 2009) (court "may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it"); *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 620 (S.D. Cal. 2004) ("[W]here the objectors represent only a small percentage of the class, the likelihood of the court granting their discovery request decreases because the court will give great weight to the interest of the majority of the class members.") (emphasis added); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (finding that 29 objections out of 281-member class "strongly favors settlement").

Here, there are 2,780 valid claimants, **without a single objector or request for exclusion.**  (CPT Decl. ¶¶ 9-11;13.)  The fact that not a single class member filed an objection or requested to exclude himself from the settlement, and that the substantial majority of the available funds are claimed, weighs heavily in favor of the Court approving the settlement.  Overwhelmingly, the Settlement Class has demonstrated their favor for the settlement.

## V. ATTORNEY'S FEES AND COSTS

Pursuant to Federal Rules of Civil Procedure, Rule 23(h), the Court may award reasonable attorneys' fees and nontaxable costs "authorized by law or by agreement of the parties...." If a negotiated class action settlement includes an award of attorney's fees, that fee award must be evaluated in the overall context of the settlement.  *Knisley v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002); *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 455 (E.D. Cal. 2013). A district court must therefore "carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement."  *Staton v. Boeing*, 327 F.3d 939, 963 (9th Cir. 2003).

The Ninth Circuit has approved two methods of assigning attorneys' fees in common fund cases: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (*citing In re Wash. Pub. Power Supply Sys. Litig.*, 19 F.3d 1291, 1295–96 (9th Cir. 1994)). The trial Court may, but is not required to, compare the lodestar and the 25% benchmark to determine if the 25% benchmark results in an inappropriately high or low fee. *See Vizcaino*, 290 F.3d at 1050-51; *Fischel v. Equitable Life Assurance Society of the United States*, 307 F.3d 997, 1001, 1007 (9th Cir. 2002) (finding no error where district court awarded fees under lodestar method and did not compare lodestar with 25% benchmark); *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1122 (C.D. Cal. 2008) ("A lodestar cross-check is not required in this circuit, and in some cases is not a useful reference point."); *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 557 (2009) ("While the court has discretion to do [conduct a Lodestar cross-check] where appropriate, it is not required."); *Ladore v. Ecolab, Inc.*, No. 2:11-cv-09386-FMO-JC, Docket No. 112, at *19 (C.D. Cal. Nov. 12, 2013) (court awarded fees of 28% of a common fund of $29 million in an unpaid overtime case, without performing a lodestar cross-check).

Under the "lodestar" method, the requested (and preliminarily approved) attorneys' fees are more than reasonable.  Plaintiff's attorneys have collectively incurred 225.8 hours in the case through the filing of this motion.  Michael A. Strauss, a lawyer of more than 10 years, and seasoned in class-action litigation, has incurred 45 hours and charges an hourly rate of $575.00. Andrew C. Ellison, a lawyer of more than 6 years, and seasoned in class-action litigation has incurred 180.8 hours and charges an hourly rate of $350.   Using the reasonable hourly rates and reasonable hours expended in the course of this litigation, Class Counsel's unadorned lodestar is as follows:

| Biller | Hours | Rate | Fees |
|---|---|---|---|
| Andrew C. Ellison | 180.8 | $350 | $62,755 |
| Michael A. Strauss | 45 | $575 | $25,875 |
| Total | 225.8 | | $88,630 |

MAS Decl. ¶¶ 29-31,38.

Class Counsel's unadorned lodestar figure is $88,630.00.  The 25-percent or $341,188.00 fee requested by Class Counsel reflects a multiplier of 3.8.  It is well-settled that a multiplier is appropriate in common fund cases to reward attorneys for the risk assumed in taking and litigating the case.  "[C]ourts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases." *In re Wash. Public Power Supply System Securities Litigation,* 19 F.3d 1291, 1300 (9th Cir. 1994).  "This mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino*, 290 F.3d at 1051.

Meanwhile, under the "percentage of the fund" method, the Ninth Circuit has repeatedly held that 25 percent of the gross settlement amount is the benchmark for attorneys' fees awarded under the percentage method, with 20 to 30 percent as the usual range in common fund cases of $50-200 million.  *Vizcaino*, 290 F.3d at 1047.  Other case law surveys suggest that 50% is the upper limit, with 30-50% commonly being awarded in cases in which the common fund is relatively small. *See Newberg on Class Actions*, § 14:6 (4th ed. 2002).  Small cases tend to have fees above the 25% benchmark in California. *Craft v. County of San Bernardino*, 624 F.Supp.2d at 1127 (holding that attorneys' fees for mega fund cases are typically under the 25% benchmark and cases below $10 million are often more than the 25% benchmark).  California district courts usually award attorneys' fees in the range of 30-40% in wage and hour class actions that result in the recovery of a common fund under $10 million. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491-92 (E.D. Cal. 2010) (citing to five recent wage and hour cases where federal judges approved fee awards ranging from 30% to 33% and approving percentage of the fund award of 33% to class counsel); *Singer v. Becton Dickinson and Co.*, 2010 WL 2196104, at *8 (S.D. Cal. 2010) (approving attorneys' fees of 33.33% of the common fund and holding this award is similar to awards in three other wage and hour class actions where fees ranged between 33.3% and 40%); *Romero v.*

1    *Producers Dairy Foods, Inc.*, 2007 WL 3492841, at *1-4 (E.D. Cal. 2007) (approving

2    award of 33% of common fund).

3         Given the circumstances here, the benefit obtained for the class, and Defendant's

4    non-opposition to fees of 30%, the requested attorneys' fees of 25% are reasonable.

5    **VI.    REQUESTS FOR COST REIMBURSEMENT**

6         The settlement agreement provides that class counsel may seek up to $15,000 from

7    the common fund for reimbursement of litigation expenses.  (*See* Settlement Agreement,

8    ECF No. 35, at ¶ 3.17.)  Plaintiff incurred $11,494.38 in costs and accordingly seek an

9    award in that amount to be paid out of the common fund.  (Strauss Decl. ¶ 16.)  These

10   costs are reasonable, and Plaintiff's request reimbursement thereof from the common

11   fund.

12   **VII.   REQUESTS FOR SERVICE PAYMENTS**

13        Plaintiff seeks service/enhancement payments as part of this settlement.  "[N]amed

14   plaintiffs . . . are eligible for reasonable incentive payments" as part of a class action

15   settlement.  *Staton v. Boeing*, 327 F.3d 938, 977 (9th Cir. 2003).  Service or incentive

16   payments to named plaintiffs recognize their time and efforts, and the risks they undertake

17   on behalf of the class.  Courts routinely award such enhancements, which are intended to

18   advance public policy by encouraging individuals to come forward and take action to

19   protect the rights of the class, as well as to compensate class representatives for their time,

20   effort and inconvenience.  *See, e.g., Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D.

21   Ga. 2001); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995);

22   *see also Staton*, 327 F. 3d at 976-77.

23        When evaluating the reasonableness of an incentive award, courts may consider

24   factors such as "the actions the plaintiff has taken to protect the interests of the class, the

25   degree to which the class has benefitted from those actions, . . . the amount of time and

26   effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of]

27   workplace retaliation."  *Staton*, 327 F. 3d at p. 977; *see also Van Vranken*, 901 F. Supp.

28   at 299.

The service payment amount of $7,500.00 to be paid to Named Plaintiff Jasmin Turner sought pursuant to the Settlement Agreement, is reasonable and reflects the considerable efforts by Ms. Turner in gathering information about the case, actively participating in the discovery process, participating in the mediation, and acting generally as the "public face" of this litigation.  Turner Decl. ¶¶ 5-16).

Plaintiff Turner was a part of the case from the inception, and spent many hours participating in this litigation.  (*Id.* at ¶ 13). As a recently-departed employee of MOTEL 6, Turner was crucial in allowing the action to allege the additional claims related to waiting time. Unlike other class members, Turner also agreed to a full, comprehensive release of all claims related to the allegations of the operative Complaint, including unknown claims and a waiver of Civil Code section 1542.  (Turner Decl. ¶ 11).

The named plaintiff has taken on a risk of industry-wide retaliation, provided valuable assistance to Class Counsel, and received very little benefit beyond the status as a Class Member.  As such, the modest proposed service award is reasonable.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457 & 463 (9th Cir. 2000) (affirming $5,000 incentive payments out of a $1.725 million settlement fund); *Van Vranken,* 901 F. Supp. at 300 (approving $50,000 participation award to a single class representative); *Staton*, 327 F.3d at 944, 977 (disapproving proposed service payments totaling $890,000, or 12% of the total monetary recovery); *Ladore*, No. 2:11-cv-09386-FMO-JC, Docket No. 112, at *13-14 (awarding lead plaintiff's incentive awards of $25,000 and $15,000); *Glass*, 2007 WL 221862, *17 (awarding $25,000 as an incentive award to each lead plaintiff). There have been no objections by Settlement Class Members to the proposed service awards herein.

Based on the foregoing, Plaintiff respectfully request the Court to grant their request for service awards of $7,500 to Plaintiff Turner.

## VIII. The PAGA Payment Should Be Approved.

### A. The Labor Code Private Attorneys General Act Of 2004 Generally.

PAGA allows private litigants to stand in the shoes of divisions of the Labor and

Workforce Development Agency ("LWDA"), like the Labor Commissioner, to assess and collect civil penalties for many Labor Code violations. *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1197 (2008). Prior to the enactment of PAGA, only the LWDA and its divisions could assess and collect such civil penalties. *Id.* In 2003 the Legislature determined that shortages in funding and staffing were preventing the LWDA from vigorously pursuing civil penalties and thus hampering their intended deterrent effect. *Id.* The Legislature enacted PAGA to allow "aggrieved employees," as private litigants, to seek and recover these civil penalties, provided that the aggrieved employee paid seventy-five percent of all penalties recovered to the LWDA. *Id*. at 1197; *Arias v. Superior Court*, 46 Cal.4th 969, 980-81 (2009); Cal. Lab. Code § 2699(i). The Court must approve the amount of penalties sought in any settlement of a PAGA action. Cal. Lab. Code § 2699(l). The proposed settlement was submitted to the LWDA on June 11, 2018, and no objection was received. (Strauss Declaration, ¶ 37).

**B. The PAGA Penalties Sought In The Settlement Are Reasonable.**

Pursuant to the settlement, $20,000.00 of the settlement fund herein is designated as penalties pursuant to PAGA, 75% of which will be payable to the LWDA and 25% of which will be shared by the Settlement Class Members. (ECF No. 26-1, at ¶ III(C)). The PAGA amount provided by the settlement herein is well within reason.

Assuming that Plaintiff was to prevail on the PAGA claim, the amount awarded by the Court could have been significantly lower than the maximum available penalties. PAGA penalties may be reduced by a court for various reasons. See Cal Lab. Code § 2699(e)(2); *Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal. App. 4th 1112, 1136 (2012), review denied (June 13, 2012) ("[T]he trial court reasonably determined that an award of the maximum penalty amount would be unjust under the facts and circumstances of this case."). Courts routinely approve even nominal amounts for PAGA penalties. *See Nordstrom Comm'n Cases*, 186 Cal. App. 4th 576, 589 (2010) ($0 out of nearly $9 million settlement allocated to PAGA penalties); *Franco v. Ruiz Food Prods., Inc.*, 2012 WL 5941801, *14 (E.D. Cal. 2012) (approving PAGA penalties of just $10,000 in $2.5

1   million common fund settlement and noting that amount was in line with settlement

2   approval of PAGA awards in other cases.)

3        Because of the uncertainty over what the trier of fact would ultimately award for

4   PAGA violations and what reductions the Court might thereafter make to such award, the

5   parties agreed on allocating the roughly $20,000.00 as PAGA penalties, 75% of which

6   would be payable to the LWDA and 25% redistributed to the class. *See Franco*, 2012 WL

7   5941801, *14 (25% of PAGA penalties added to net settlement amount for distribution

8   to the class).  Plaintiff's counsel believe this PAGA settlement amount is an excellent

9   result and favorably compares to other PAGA settlements in California. Accordingly,

10  Plaintiff respectfully requests this Court to approve the amount of PAGA penalties that

11  the parties designated pursuant to the settlement.

12  **IX.   CONCLUSION**

13       Plaintiff submits that that the proposed settlement is fair, reasonable and adequate

14  and requests the Court to enter an order to the effect that:

15       1.    The Settlement is approved in its entirety;

16       2.    The members of the Class were provided with adequate notice of the action

17  and settlement terms;

18       3.    The members of the Class were given an adequate opportunity to opt-out of

19  the action and the settlement;

20       3.    The Settlement Fund be disbursed in accordance with the Settlement

21  Agreement;

22       4.    Class Representative Jasmin Turner be awarded $7,500 as a service award

23  for her time and efforts;

24       5.    The Court hereby confirm Strauss & Strauss, APC as Class Counsel;

25       6.    Class Counsel's attorneys' fees and costs be granted in the amount of

26  $341,188.00 in fees, and $ 11,494.38 in out-of-pocket expenses;

27       7.    The Court approve the PAGA payment of $15,000 to the LWDA;

28       8.    The Court order that a Claims Administration Payment in the amount of

$25,500 be paid to the Claims Administrator, CPT Group, Inc., from the Maximum Settlement Amount for the costs of administration; and

9.      Jurisdiction is reserved by this Court to assure compliance with all terms of this settlement, in accordance with the Settlement Agreement and this Final Judgment.

Dated:  October 5, 2018                    **STRAUSS & STRAUSS, APC**
                                           **A Professional Corporation**


                                           By: /S Michael A. Strauss
                                               Michael A. Strauss, Esq.
                                               Andrew C. Ellison, Esq.
                                               *Attorneys for Plaintiff and the Class*